MID-PLAINS TELEPHONE, INC., Appellant, v. PUBLIC SERVICE COMMISSION, Respondent.

*No. 263. Argued November 29, 1972.—Decided January 3, 1973.*
(Also reported in 202 N. W. 2d 907.)

For the appellant there were briefs by *Axley, Brynelson, Herrick & Gehl* of Madison and oral argument by *Floyd A. Brynelson.*

For the respondent the cause was argued by *William E. Torkelson,* chief counsel, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. This action emanates from a petition for substitution of service filed with the Public Service Commission (hereinafter commission) by a number of residents of Parkwood Hills, now a subdivision of the city of Madison, located on the city's far west side. Prior to its annexation to the city of Madison, Parkwood Hills was, and it still is, serviced by the Middleton exchange of Mid-Plains. The petition sought a substitution of the Madison exchange of the Wisconsin Telephone Company for that of Mid-Plains' Middleton exchange.

The commission denied the petition for substitution of service, and that issue is not before us on this appeal. However, in addition to the issue of substitution of service, the commission also noticed for hearing, at the same time, the issue of rates.

At the hearing, it developed that Mid-Plains was requiring the residents of Parkwood Hills to pay an additional charge of $20 a month above the standard foreign exchange service charge for Madison foreign exchange service. This charge was being made pursuant to the then filed foreign exchange tariff of Mid-Plains, designated as sec. No. I, sheet No. 17, amendment No. 37, paragraph D.

When the commission entered its order of July 16, 1969, denying the substitution of service, it also ordered that paragraph D of the filed foreign exchange service tariff

of Mid-Plains be canceled because the commission found it to be unreasonable and unjust. The commission denied the motion of Mid-Plains for a rehearing of that portion of its July 16th order canceling paragraph D, and Mid-Plains took no further action.

At this stage of the proceedings, no problems had developed, but subsequent action of Mid-Plains and the commission precipitated this litigation. Sometime after the entry of the July 16th order of the commission, and after the time for appeal had expired, Mid-Plains was requested to quote the rates for foreign exchange service to the Madison exchange of the Wisconsin Telephone Company for the Parkwood Hills customers of Mid-Plains.

Mid-Plains responded by letter dated December 1, 1969, directed to the commission. In its rate quotation, Mid-Plains determined that paragraph B–2–b, and not B–2–a, of its filed tariff was applicable to the Parkwood Hills residents. Such an application of the filed tariff of Mid-Plains produced substantially the same rate as that in existence prior to the cancellation of paragraph D of the filed tariff by the July 16, 1969, order of the commission. The commission responded by sua sponte issuing an *ex parte* order dated December 4, 1969, deleting some language in B–2–a of the filed tariff in order to effect a lower rate for the Parkwood Hills residents. The commission denominated this a "Supplemental Order." As previously stated, it is this December 4, 1969, order of the commission that produced this appeal.

As it concerns this appeal, the pertinent provisions of the filed tariff for foreign exchange service are:

"B. Rates
  "1. . . .
  "2. *Mileage Charges*
  "a. For customers located within 2 miles of a common exchange boundary and *outside the Base Rate Area,* the

monthly rate for each main telephone and P. B. X. trunk is the sum of the follwing: . . ." (Emphasis added.)

B–2–b of the filed tariff establishes rates ". . . For all other customers. . . ."

Mid-Plains, in submitting its rate quotation of December 1, 1969, determined that the Parkwood Hills residents were not *"outside the Base Rate Area,"* and, therefore, subject to the rates provided in B–2–b.

The December 4, 1969, order of the commission struck the words "outside the Base Rate Area" from paragraph B–2–a, in order to provide a lower tariff for Parkwood Hills residents.

Prior to 1968, the base rate area of the Middleton exchange of Mid-Plains was composed of what can be described as the general metropolitan area of Middleton. The remainder of the area served by the Middleton exchange had an established rural area rate. After due notice, a hearing was held in 1967, and as a result, a subsequent order of the commission and filings by Mid-Plains in 1968, the rural rate area was eliminated and the entire area served by the Middleton exchange of Mid-Plains was designated as the "Base Rate Area." It follows that this modification would place Parkwood Hills within the base rate area.

*Issue.*

The issue presented is whether the commission acted in excess of its authority and in violation of due process when it issued the December 4, 1969, order without affording Mid-Plains any notice or an adequate opportunity to be heard.

Mid-Plains contends that the commission's order of December 4, 1969, is void, in that it was issued in excess of the commission's power and authority. Mid-Plains

argues that the commission failed to afford it adequate notice and opportunity to be heard prior to the issuance of the December 4, 1969, order modifying its filed tariffs. It further maintains that when it sent its December 1, 1969, quotation to the commission, the only applicable rates in its filed tariff for foreign exchange service were those contained in B–2–b. Our attention has not been directed to any other applicable filed tariffs.

It is the commission's position, and the trial court held, that Mid-Plains had made an erroneous interpretation of the meaning and application of the July 16, 1969, order; that the commission merely took steps to clarify and carry out the intention of its July 16, 1969, order by the issuance of the December 4, 1969, order; and that Mid-Plains failed to seek judicial review of the July 16, 1969, order, and is precluded from doing so now. The commission argues that as an administrative agency it can take appropriate action, without notice or hearing, to clarify or enforce its original order, and that the December 4, 1969, order was a mere conformation to the actual intent of the commission in the issuance of the July 16, 1969, order.

As we view this case, it is not a question of what the commission intended to do when it issued its July 16, 1969, order. The fact is that the order canceled paragraph D and nothing more, and Mid-Plains did not appeal from this order. There was no need for it to appeal as long as paragraph B–2–a remained in effect. Furthermore, from the record before us, it cannot be ascertained whether the words "outside the Base Rate Area" would relate to only those residents of Parkwood Hills. In addition to the Middleton exchange, Mid-Plains operates the Cross Plains exchange.

Generally, the fundamental or essential requirement of procedural due process of law is notice and hearing, that

is opportunity to be heard either before a court or the administrative agencies.[1]

The commission is an administrative body created by the legislature. Its powers are limited by the statutes conferring such power expressly or by fair implication. Every administrative agency must conform precisely to the statutes from which it derives power. *Schmidt v. Local Affairs & Development Dept.* (1968), 39 Wis. 2d 46, 56, 57, 158 N. W. 2d 306.

The legislature has specifically delineated the procedure to be used to determine the reasonableness of public utility rates prior to the issuance of a rate order by the commission.[2] Among these statutes is sec. 196.39, which provides:

**"Change, amendment and rescission of orders; reopening cases.** The commission may at any time, on its own motion or upon motion of an interested party, *and upon notice to the public utility and after opportunity to be heard,* rescind, alter or amend any order fixing rates, tolls, charges or schedules, or any other order made by the commission, and may reopen any case following the issuance of an order therein, for the taking of further evidence or for any other reason. Any order rescinding, altering, amending or reopening a prior order shall have the same effect as an original order." (Emphasis added.)

The commission's power to act in fixing rates without the consent or against the objections of the utility is dependent upon its giving the utility a hearing. This court, in *Wisconsin Telephone Co. v. Public Service Comm.* (1939), 232 Wis. 274, 293, 294, 287 N. W. 122, 287 N. W. 593, stated:

"Sec. 196.39, Stats., by its terms applies specifically to orders fixing rates, tolls, charges, or schedules, and confers upon the commission authority to rescind, alter,

[1] 2 Am. Jur. 2d, *Administrative Law,* p. 204, sec. 399; 73 C. J. S., *Public Administrative Bodies and Procedure,* pp. 494, 495, sec. 157.
[2] Secs. 196.20 to 196.40, Stats.

or amend an order already made fixing rates, tolls, charges, etc. This is intended apparently to give the commission some power upon a hearing to amend an order already entered. The power contained in sec. 196.395 to issue conditional, temporary, emergency, and supplemental orders is subject of course to the procedural requirements of other provisions of ch. 196, Stats., because they are in *pari materia.* The legislature certainly never intended to authorize the commission to issue orders affecting the rights of citizens without giving citizens an opportunity to be heard. A legislative act purporting to confer such power would be clearly invalid.

. . .
"It is considered that an order of the commission fixing rates, tolls, and charges can be made only upon an investigation and hearing; that the hearing to be given the parties affected is the hearing prescribed by sec. 196.26, Stats., . . .
". . .
"By the express terms of the statute the power of the commission to act in fixing rates without the consent or against the objections of the utility is dependent upon its giving the utility a hearing. . . ."

This court, on page 303, went further to hold:

". . . It is clear that with reference to rates, the commission has no authority to make an order without first giving the utility a hearing, whether the order be styled temporary or an order in due course, and it is immaterial whether the order is made upon a complaint, upon a summary investigation, or upon the commission's own motion."

The commission acted outside its statutory grant of power in striking a provision from Mid-Plains' tariff schedule without affording the utility an adequate hearing on notice. The cardinal test of the presence or absence of "due process" of law in an administrative proceeding is the presence or absence of the rudiments of fair play long known to law. *State ex rel. Madison Airport Co. v. Wrabetz* (1939), 231 Wis. 147, 285 N. W. 504. In *Wrabetz, supra,* page 155, this court held:

". . . An order or award made in a proceeding conducted in disregard of the procedural safeguards prescribed by the statute authorizing the exercise of authority by the commission, or in disregard of the rudiments of fair play required by the federal and state constitutions, is certainly without and in excess of the commission's powers; . . ."

The commission's order, fixing the rate structure of Mid-Plains' tariff for foreign exchange service, issued without either notice or hearing afforded to Mid-Plains, violates due process of law and is in excess of the commission's powers. Such an order entered by an administrative commission in a quasi-judicial proceeding wherein the commission has denied due process to a party thereto is void, and the aggrieved party is entitled to an appropriate proceeding, and if he has been prejudiced, to have the order set aside. *Folding Furniture Works v. Wisconsin Labor Relations Board* (1939), 232 Wis. 170, 191, 285 N. W. 851, 286 N. W. 875.

The commission's order of December 4, 1969, is set aside and declared void. If, in the commission's judgment, paragraph B–2–a of Mid-Plains' tariff is unreasonable and unjust, it may proceed according to law and amend the provision if the evidence ascertained upon adequate notice and hearing would substantiate such a decision and order.

The commission strongly argues that it has authority to issue supplemental or further orders to establish and carry out the intent of its prior orders. It argues that if the December 4, 1969, order is declared void, the issuance of the July 16, 1969, order canceling paragraph D, thus eliminating the $20 per month extra charge for foreign exchange service, would be an exercise in futility. We do not pass such severe judgment on the action of the commission, nor do we here attempt to probe its intent. We must take the record as we find it. The action taken by the commission in the issuance of its December 4, 1969,

order was not such as would be required to correct a clerical or ministerial error or to make an order conform to a record already made. Therefore, whether the commission has the power similar to courts to issue such orders need not be decided on this appeal.

In 2 Am. Jur. 2d, *Administrative Law,* p. 345, sec. 533, it is stated:

"The performance of the redetermination function is conditioned by the demands of procedural due process for the protection of private and public interests, and a modification or change of findings or orders affecting a substantial right of an aggrieved party may not be made without notice and opportunity to be heard. But a change by which parties cannot possibly suffer may be made without notice."

The commission's order of December 4, 1969, strikes from Mid-Plains' filed tariff schedule a provision that had not been previously stricken and could possibly affect a broader class of Mid-Plains' customers than did the commission's order of July 16, 1969.

The essence of justice is largely procedural. Procedural fairness and regularity are of the indispensable essence of liberty. *Shaughnessy v. Mezei* (1953), 345 U. S. 206, 224, 73 Sup. Ct. 625, 97 L. Ed. 956.

The December 4, 1969, order of the commission is without and in excess of its statutory power, and in violation of due process of law, and is therefore void.

*By the Court.*—Judgment reversed, and cause remanded for proceedings consistent with this opinion.