LA VERNE AUSMAN, Secretary Department of Agriculture, Trade andConsumer Protection
You ask whether the Land Conservation Board (Board) may revoke or rescind an exclusive agricultural zoning ordinance certification previously granted under sections 91.06 and 91.78, Stats., and inquire as to the procedure which should be followed if the Board has such power.
In my opinion, the Board has authority to prospectively revoke or rescind a certification granted under sections 91.06 and91.78, if the Board provides notice and an opportunity to be heard to the local governing body having jurisdiction and to landowners who might be affected by such a decertification decision.
Pursuant to chapter 91, the Board, which is created under section 15.135(4), certifies county agricultural preservation plans and exclusive agricultural zoning ordinances enacted by local units of government. Such certifications affect the amount of the farmland *Page 79 
preservation tax credit determined by the Department of Revenue pursuant to section 71.09(11). The Board also possesses certain appellate functions which are not at issue here. Chapter 91 also grants extensive powers to the Department of Agriculture, Trade and Consumer Protection (Department) in connection with the administration of the Farmland Preservation Act. In general, the Department possesses administrative and fact-gathering powers which are to be used to assist the Board in performing its decision-making functions.
You indicate that the Board and the Department have recently become aware that two exclusive agricultural zoning ordinances which the Board has certified under sections 91.06 and 91.78 have been amended so as to remove large tracts of land from exclusive agricultural zoning status. This information, presumably acquired pursuant to section 91.77(3), indicates that a majority of the land formerly zoned exclusive agricultural has been rezoned to other classifications. You indicate that, based upon the information acquired, the two zoning ordinances apparently no longer meet the standards contained in section 91.75 and, therefore, could not have been certified by the Board in whole or in part had the entire zoning ordinances initially been submitted to the Board in their present form. You therefore inquire as to the Board's power to remedy such situations.
Your inquiry arises under subchapter V of the Farmland Preservation Act, which is entitled "Exclusive Agricultural Zoning." Section 91.78 of that subchapter provides that "COPIES OF EXCLUSIVE AGRICULTURAL ZONING ORDINANCES MAY BE SUBMITTED TO THE BOARD FOR REVIEW AND CERTIFICATION UNDER s. 91.06."
Section 91.06 provides as follows:
 Certification. The board shall review farmland preservation plans and exclusive agricultural use zoning ordinances submitted to it under ss. 91.61 and 91.78 and shall certify to the appropriate zoning authority whether the plans and ordinances meet the standards of subchs. IV and V, respectively. Certifications may be in whole or in part.
The minimum standards which are to be applied by the Board in deciding whether to certify an exclusive agricultural zoning ordinance are contained in section 91.75. Under various provisions contained in section 71.09(11)(b)3., an exclusive agricultural zoning *Page 80 
ordinance certification must be in effect "at the close of the year for which credit is claimed" to entitle the land owner to a property tax credit under section 71.09(11)(b)2. in connection with such certification.
Rezoning is covered by section 91.77, which provides as follows:
 Ordinance revisions. (1) A county, city, village or town may approve petitions for rezoning areas zoned for exclusive agricultural use only after findings are made based upon consideration of the following:
 (a) Adequate public facilities to accommodate development either exist or will be provided within a reasonable time.
 (b) Provision of public facilities to accommodate development will not place an unreasonable burden on the ability of affected local units of government to provide them.
 (c) The land proposed for rezoning is suitable for development and development will not result in undue water or air pollution, cause unreasonable soil erosion or have an unreasonably adverse effect on rare or irreplaceable natural areas.
 (2) Land which is rezoned under this section shall be subject to the lien provided under s. 91.19(8) to (10) for the amount of tax credits paid on the land rezoned. If the rezoning occurs solely as a result of action initiated by a governmental unit, any lien required under s. 91.19(8) to (10) shall be paid by the governmental unit initiating the action.
 (3) The department shall be notified of all rezonings under this section.
Your inquiry requires an analysis of the inter-relationship between the certification provisions of sections 91.06 and 91.78, the tax credit provisions of section 71.09(11)(b)3. and the rezoning provisions of section 91.77. Such an analysis is required because section 91.06 does not specifically state that ordinance revisions submitted to the Department pursuant to section 91.77(3) may be considered by the Board in making certification decisions.
The powers that may be exercised by the Board include not only those powers expressly granted by statute, but also those powers necessarily implied as essential to the accomplishment of its duties. See Kasik v. Janssen, 158 Wis. 606, 609-10, 149 N.W. 398
(1914). For example, it has long been held that the power to correct clerical *Page 81 
errors which plainly appear of record is a necessary power in the administration of every agency. Bell v. Hearne et al., 60 U.S. 614
(1856). The United States Supreme Court has stated that:
 To hold otherwise would be to say that once an error has occurred the [agency] is powerless to take remedial steps . . . . In fact, the presence of authority in administrative officers and tribunals to correct such errors has long been recognized — probably so well recognized that little discussion has ensued in the reported cases.
American Trucking Ass'n v. Frisco Transp. Co., 358 U.S. 133, 145
(1958) (footnote omitted). Although policy considerations similar to those identified by the Supreme Court in American Trucking are present here, further analysis is required when an agency seeks to do more than simply correct a clerical error. See Mid-PlainsTelephone v. Public Serv. Comm., 56 Wis.2d 780, 788-89,202 N.W.2d 907 (1973)
An administrative agency has only those powers which are expressly conferred or necessarily implied from the statutes under which it operates. Elroy-Kendall-Wilton Schs. v. Coop.Educ. Serv., 102 Wis.2d 274, 278, 306 N.W.2d 89 (Ct.App. 1981). "The rule that an administrative agency, being a creature of statute, is limited in powers to those expressly delegated by the legislature, permits the exercise of power which arises by fair implication from the express powers." Wisconsin's EnvironmentalDecade, Inc. v. PSC, 69 Wis.2d 1, 16, 230 N.W.2d 243 (1975). Continuing jurisdiction on the part of the agency may be implied even where it has not been expressly granted by statute. Cf.Wilbur v. United States, 281 U.S. 206, 217 (1930); Brougham v.Blanton Mfg. Co., 249 U.S. 495, 501 (1919). See 2 DavisAdministrative Law Treatise sec. 18.09 (1st Ed. 1958). However, any reasonable doubt concerning the existence of statutory authority must be resolved against the agency. See State (Dept.of Admin.) v. ILHR Dept., 77 Wis.2d 126, 136, 252 N.W.2d 353
(1977)
I find no reasonable doubt as to the existence of continuing jurisdiction to make certification decisions because statutes should be given a contemporary and practical interpretation and must be construed to avoid absurd or unreasonable results. Statev. Coble, 95 Wis.2d 717, 291 N.W.2d 652 (Ct.App. 1980), aff'd,100 Wis.2d 179, 301 N.W.2d 221 (1981); Estate of Evans,28 Wis.2d 97, 101, *Page 82 135 N.W.2d 832 (1965). If the Board did not possess continuing jurisdiction to rescind or revoke its certification when a local unit of government amends its exclusive agricultural zoning ordinance, the municipality could simply wait until certification were granted and then immediately rezone all or some portion of the lands in the certified area to a classification other than exclusive agricultural. Such a result would entirely thwart the purpose of the Farmland Preservation Act and could not possibly have been contemplated by the Legislature.
In my opinion, the power to prospectively revoke or rescind an exclusive agricultural zoning ordinance certification is fairly implied from the provisions of sections 71.09(11), 91.06 and91.77. The statutory scheme indicates that once an ordinance is submitted to the Board for certification under section 91.78 the Board may alter its certification decision if the ordinance is changed. Section 91.06 obligates the Board to review exclusive agricultural zoning ordinances submitted to it under section91.78. Section 91.78 contains no requirement that the ordinance be submitted to the Board by the local unit of government. An ordinance may be submitted to the Board by the Department acting pursuant to information received under section 91.77(3). In such situations, the original ordinance submission and any amendments received by the Department must be evaluated to determine whether the rezoning amendments cause the entire ordinance to fall below the minimum standards contained in section 91.75.
Because section 91.73(2) requires that the ordinance be consistent with the plan established under subchapter IV, it is also doubtful that any significant change could lawfully be made in the ordinance unless the plan were also changed. Moreover, various provisions of section 71.09(11)(b)3. require that exclusive agricultural zoning certification be in effect "at the close of the year for which credit is claimed." And section71.09(11)(h)1. authorizes the Department of Revenue to require that a certificate from the local zoning authority stating that the land is covered by a certified exclusive agricultural zoning ordinance be submitted by the property owner each time a farmland preservation tax credit claim is filed. The fact that the Department of Revenue can continue to require proof of certification provides further indication that the certification process is not static, but continuing. These statutory provisions indicate that the Legislature has vested the Board with *Page 83 
continuing jurisdiction to make prospective certification decisions when local units of government remove land from the exclusive agricultural zoning classification by amending an ordinance which the Board has already certified.
You also ask what procedure should be established and followed to revoke or rescind a previously-granted certification. Any such prospective determination must afford due process to affected parties. "[I]t has always been recognized that one who has acquired rights by an administrative or judicial proceeding cannot be deprived of them without notice and an opportunity to be heard." Garfield v. United States ex rel. Goldsby, 2 U.S. 249,262 (1908). Under the longstanding rule of that case, property owners who might be adversely affected would have to be notified and given an opportunity to be heard during the course of proceedings at which information concerning possible decertification is received. The "local governing body having jurisdiction" under section 91.01(8) should also be notified. It may also be desirable to notify one or more of the agencies listed in section 91.13(2), since they might also have information which should be considered in making a decertification decision. Because due process requires an impartial decision-maker, cf. Mid-Plains, 56 Wis.2d at 789, it is also imperative that no prejudgment bias in favor of decertification be exhibited during the course of any such proceedings.
One other item of importance is raised in the materials which you have submitted. There is a suggestion that section 91.77(2) might be interpreted to require the imposition of a lien under section 91.19(8), which would have to be repaid by the responsible local unit of government under certain specified circumstances. Section 91.77(2) applies only to "land rezoned." As to such land, sections 91.19(8) and 91.77(2) authorize the Department to impose a lien for any tax credits received during the past ten years (plus six percent compound interest per annum in certain circumstances) and require the governmental unit that initiated the rezoning to satisfy the lien if the rezoning occurs solely as a result of such action. Your materials indicate that no tax credits were ever claimed in connection with any of the lands rezoned in these situations. Therefore, no lien can be imposed and no payment can be required. Those lands which remain in exclusive agricultural zoning status are not affected by section 91.77(2). They will, however, suffer a prospective reduction in tax credits under section *Page 84 
71.09(11)(b)3. if the ordinance is decertified, unless certification is again granted prior to the close of the calendar year.
BCL:FTC