**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 17, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1996**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV334**

IN COURT OF APPEALS
DISTRICT IV

DEFEND TOWN PLANS, U.A., DALE KONLE,
KIM VERHEIN HERRO, KIMBERLY A. MILLER,
ROBERT GARTZKE, KAREN GARTZKE, AND
SALLY J. WILLIAMS,

    PETITIONERS-RESPONDENTS,

  V.

JEFFERSON COUNTY BOARD OF SUPERVISORS,

    RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Jefferson County: WILLIAM V. GRUBER, Judge. *Affirmed as modified and remanded.*

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

¶1 GRAHAM, J. This appeal arises from a certiorari petition that was filed by Defend Town Plans, U.A., and several individuals (collectively "Defend

Town"), which challenged a rezoning ordinance adopted by the Jefferson County Board of Supervisors (the "County Board"). The rezoning ordinance changed the zoning classification of 7.4 acres of land in a 24-acre parcel from "exclusively agricultural" (A-1) to "agricultural and rural business" (A-2). Defend Town argues that the rezoning ordinance was not validly adopted because the County Board did not make the findings required by WIS. STAT. § 91.48(1) (2021-22) before voting to rezone the land out of a farmland preservation zoning district.[1] Defend Town further argues that it would be futile to give the County Board an opportunity to make those findings on remand because the County Board could not do so as a matter of law. Specifically, Defend Town contends that the County Board could not reasonably find that the rezoning ordinance is consistent with Jefferson County's comprehensive plan, as required by § 91.48(1)(b).

¶2 Based on our certiorari review, we conclude that the rezoning ordinance is invalid because the County Board did not make the findings required by WIS. STAT. § 91.48(1). However, we reject Defend Town's argument that a remand would be futile. Rather, because the County Board did not make any of the required findings, including that a rezoning would be consistent with Jefferson County's comprehensive plan, there is no determination for us to assess within the

---

[1] Defend Town also argues that the County Board failed to make the findings required by JEFFERSON COUNTY ORD No. 11.11(e)6. (last updated March 12, 2024). We do not separately address this argument because our determination that the County Board failed to make the findings required by WIS. STAT. § 91.48(1) is dispositive. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (An appellate court need not address every issue raised by the parties when one issue is dispositive.).

All references to the Jefferson County Ordinances are to the online register last updated on March 12, 2024, which are available at https://cms4files.revize.com/jeffersoncountynew/County%20Board/Ordinances/Zoning%20Ordinance.pdf. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

limited scope of certiorari review. Accordingly, we affirm the circuit court's decision as modified, and we remand for the court to enter an order that remands the matter to the County Board for additional proceedings that are consistent with the requirements of § 91.48(1).

## BACKGROUND

¶3 The issues in this case relate to local land use planning and zoning, and the legal framework that governs such planning and zoning decisions. Before turning to the rezoning petition at issue here, it is useful to provide some basic background on the statutes governing comprehensive plans, farmland preservation plans, and farmland preservation zoning ordinances, which are the three types of land-use planning documents that are implicated in this appeal.

¶4 Wisconsin statutes encourage all local governments, including towns and counties, to engage in comprehensive planning. *See* WIS. STAT. § 66.1001. Generally speaking, a comprehensive plan is an advisory "guide to the physical, social, and economic development" of a community, § 66.1001(1)(a), and it includes "[a] compilation of objectives, policies, goals, maps[,] and programs to guide [such] development," § 66.1001(2)(b). *See Step Now Citizens Grp. v. Town of Utica Planning & Zoning Comm.*, 2003 WI App 109, ¶45, 264 Wis. 2d 662, 663 N.W.2d 833 (characterizing comprehensive plans as "merely advisory" guides). As relevant here, the Town of Concord and Jefferson County have both developed comprehensive plans to guide development in their respective jurisdictions.

¶5 Wisconsin statutes also encourage local governments to plan for the preservation of farmland as part of their comprehensive plans. *See generally* WIS. STAT. ch. 91; WIS. ADMIN CODE ch. ATCP 49; *see also* WIS. STAT.

§ 66.1001(2)(e).  To that end, WIS. STAT. § 91.10(1) requires each county to develop a farmland preservation plan that, among other things, identifies "areas that the county plans to preserve for agricultural use and agriculture-related uses." *See* § 91.10(1)(d).  Here, Jefferson County developed a farmland preservation plan that is incorporated into its comprehensive plan.  *See* § 91.10(2).

¶6      Finally, and most directly pertinent to our resolution of this appeal, Wisconsin statutes also incentivize local governments to adopt farmland preservation zoning ordinances.  WIS. STAT. § 91.30.  If a county passes a farmland preservation ordinance and obtains certification from the department of trade, agriculture, and consumer protection ("DATCP"), qualified landowners in the county will be eligible for tax incentives.  *See* WIS. STAT. §§ 91.36, 71.613(2). To receive DATCP certification, a county's farmland preservation zoning ordinance must, among other things, create farmland preservation zoning districts that restrict "conditional" and "permitted" land uses.  WIS. STAT. § 91.42.[2] Importantly here, once land is included in a farmland preservation zoning district, it can be rezoned through the process set forth in WIS. STAT. § 91.48.  Jefferson

---

[2] More specifically, WIS. STAT. § 91.42 provides that land uses in farmland preservation zoning districts are restricted to "[u]ses identified as permitted uses in [WIS. STAT. §] 91.44"; "[u]ses identified as conditional uses in [WIS. STAT. §] 91.46"; "[p]rior nonconforming uses, subject to [various statutes that are inapplicable here]"; and "[o]ther uses allowed by the department by rule."

In *Town of Rhine v. Bizzell*, 2008 WI 76, ¶¶20-21, 311 Wis. 2d 1, 751 N.W.2d 780, our supreme court explained the difference between conditional and permitted uses as follows. Conditional uses are "those particular uses that a community recognizes as desirable or necessary," "but which the community will sanction only in a controlled manner" through conditional use permits. *Id.* A conditional use permit allows a property owner to put the property "to a use which the [zoning] ordinance expressly permits when certain conditions or standards have been met." *Id.*, ¶21. By contrast, permitted uses are "as of right," and are authorized by the applicable zoning ordinance itself, without the need to satisfy additional conditions or standards needed to obtain a conditional use permit. *See id.*, ¶¶20-24.

County adopted a farmland preservation zoning ordinance, and its ordinance was certified by DATCP.

**The Brunson Parcel**

¶7      As mentioned, Defend Town's certiorari petition challenges the County Board's decision to rezone 7.4 acres of a larger parcel. The larger parcel in question, which we refer to as the "Brunson parcel," is in the Town of Concord, which is in Jefferson County. It is undisputed that, prior to the rezoning decision that is challenged in this appeal, the Brunson parcel was zoned for "exclusive agricultural" use (as designated by an A-1 zoning classification). The Brunson parcel was identified in Jefferson County's farmland preservation plan as part of an area that the county intended to preserve for agricultural and agricultural-related use, and it was also included in the county's certified farmland preservation zoning ordinance as part of a farmland preservation zoning district.

¶8      The Brunson parcel was directly adjacent to a parcel owned by a recreational boat dealer named Boat House of Lake Country ("Boat House"). As we understand it, the Boat House parcel was located in or near the only "rural hamlet" in the Town of Concord.[3] Boat House used its parcel as a boat storage facility, and it sought to purchase 7.4 acres of the Brunson parcel on which it intended to expand that facility. The portion of the Brunson parcel on which Boat House sought to expand was adjacent to Boat House's existing facility, outside the rural hamlet's boundary. It is undisputed that these acres could not be used for a

---

[3] Jefferson County's farmland preservation plan defines a "rural hamlet" as a "collection of small-scale, usually older buildings in a town, often located at or near the crossroads of two rural highways, and typically including some mix of residential and non-residential uses."

5

boat storage facility unless, among other things, their zoning classification was changed from exclusively agricultural (A-1) to agricultural and rural business (A-2).[4] It is also undisputed that, if the acres were rezoned to A-2, they would have to be rezoned out of the farmland preservation zoning district.

**Boat House's Rezoning Petition**

¶9 We now turn to the process that Jefferson County and the Town of Concord undertook to rezone the portion of the Brunson parcel that Boat House intended to purchase, which is pertinent to whether the rezoning ordinance was validly adopted. As mentioned, the primary issue on appeal is whether the County Board complied with WIS. STAT. § 91.48 during the course of this process. We nevertheless summarize the rezoning process in its entirety, as it provides the background necessary to understand the parties' arguments.

¶10 Jefferson County is responsible for administering zoning in the Town of Concord, but neither the county nor the town have unilateral authority. *See **Quinn v. Town of Dodgeville***, 122 Wis. 2d 570, 579-80, 364 N.W.2d 149 (1985). Instead, the parties agree that Jefferson County and the Town of Concord both play a role when considering whether a rezoning ordinance should be adopted.[5] When the county receives a petition to rezone property, it first refers the

---

[4] As we understand it, Boat House would also have to obtain a conditional use permit because the County's zoning ordinances do not allow boat storage facilities in A-2 property as a permitted use, but the ordinances may allow such facilities as a conditional use. The record here reflects that, at the time Boat House submitted its rezoning petition, it also applied for a conditional use permit that would allow it to construct ten boat storage barns on the rezoned parcel. Boat House's petition for a conditional use permit is not at issue in this certiorari appeal, and we discuss it no further.

[5] At times, the parties use the term "map amendment" to refer to a rezoning ordinance.

petition to zoning authorities in the town for a recommendation. *See* WIS. STAT. §§ 60.62(4)(a) (town plan commission), 60.20 (town board). If the town board recommends that the rezoning petition be approved, the petition will be considered by the county's designated zoning agency and then ultimately by the County Board. WIS. STAT. § 59.69(2)(a), (5). Upon receipt of a rezoning petition that has been recommended for approval by the town board, the county zoning agency holds a public hearing, § 59.69(5)(e)3., after which it votes on whether to recommend that the petition be approved, modified and approved, or disapproved, § 59.69(5)(e)4. If the zoning committee recommends approval of the petition, it drafts a proposed ordinance and submits it to the County Board with recommendations. *See* § 59.69(5)(e)4.; *see also* JEFFERSON COUNTY ORD. § 11.11(c)3. If the County Board votes to adopt the proposed ordinance, the town board has 40 days to veto the County Board's decision. *See* § 59.69(5)(e)6.

¶11 As pertinent here, Boat House filed a petition in November 2021 asking the County Board to rezone the 7.4 acres of the Brunson parcel to A-2.[6] The County Board first referred the petition to the town board. Although the town plan commission, the town chairperson, and others opposed the petition, the town board voted in favor of recommending the rezoning. The petition was then returned to Jefferson County for consideration.

¶12 At the county level, the petition was first considered by the Jefferson County Planning & Zoning Committee (the "county zoning committee"), which is Jefferson County's designated zoning agency. The county zoning committee

---

[6] The petition also sought to create an A-3 ("agricultural / rural residential") zone around the residence on the Brunson parcel. The County Board's decision to rezone that portion of the parcel was not challenged in Defend Town's certiorari petition, and we discuss it no further.

conducted a site inspection; it held a public hearing; and it held two decision meetings at which it discussed the petition. A significant focus of conversation at the public hearing and the decision meetings was one of the topics addressed in WIS. STAT. § 91.48(1)—whether the petition was consistent with the Town of Concord's comprehensive plan, and more specifically the portion of that plan that would confine all businesses to the town's rural hamlet. As mentioned, the portion of the Brunson parcel on which Boat House sought to expand was outside the rural hamlet's boundary.

¶13 During the public hearing, Boat House representatives spoke in favor of the petition, and several town officials and residents spoke in opposition. Those who spoke in opposition stated their view that the proposed rezoning was inconsistent with the Town of Concord's comprehensive plan, and also identified concerns over traffic congestion, lighting, and drainage.

¶14 Then, at the county zoning committee's first decision meeting, much of the discussion concerned the Town of Concord's comprehensive plan, and what Jefferson County could or should do about any inconsistency between the proposed rezoning and the town plan. At least one of the committee members expressed the view that the county was required to follow the town plan, and further opined that the petition was inconsistent with the town plan. Other members of the committee indicated that, absent any inconsistency with the town's plan, they would vote to recommend that the petition be approved. The committee also discussed the fact that the town plan was outdated, and questioned whether an "expired" plan was legally binding on Jefferson County. The committee voted to table its consideration of the petition in order to give the Town of Concord time to update its plan.

¶15    The county zoning committee reconvened to consider the rezoning petition the following month. As of that meeting, the Town of Concord had not taken any further action to update its comprehensive plan. The county zoning committee members once again discussed whether the petition was consistent with the town plan, and whether the committee could or should recommend that the County Board vote against the petition due to that alleged inconsistency. During the discussion, Jefferson County's zoning director opined that the town's plan was "meant for the Town to provide guidance and their recommendations," that the town had recommended that the rezoning petition be approved, and that "if the Town isn't following [its plan], … that's a Town issue." The zoning director suggested that, "at the end of the day," the committee should look to Jefferson County's comprehensive plan and ordinances "and leave the [T]own out of it." Committee members expressed different views on the topic of whether the rezoning would be consistent with Jefferson County's comprehensive plan.

¶16    As the discussion continued, members of the county zoning committee focused on whether other parcels outside of the Town of Concord's rural hamlet had been rezoned from A-1 to A-2. Committee members also noted that the Brunson parcel was directly adjacent to property that was zoned for business use. Ultimately, the committee voted unanimously in favor of recommending the rezoning, with the chair of the committee stating that "the reasons" for the vote were "basically we've noted that the Town has approved other [requests to rezone property to A-2] and [the acreage at issue] is adjacent to an existing business property."

¶17    The county zoning committee's March 28, 2022 vote was commemorated in a written decision, which was made on a preprinted form document. The decision states that, "based upon the findings of fact, the

9

amendment file, site inspection, public hearing, zoning ordinance, and the agricultural preservation and land use plan," the committee determined that the rezoning "[c]omplies" with unspecified standards for the following reasons: "The Town Board approved, and has approved other such uses outside the hamlet. This proposal is adjacent to the same use inside the hamlet." The form decision contains a checkbox next to the following language: "The [committee] finds this amendment meets the standards of [WIS. STAT. §] 91.48 …." That box on the form decision is unchecked.

¶18 As a result of the county zoning committee's decision, a draft ordinance was prepared and provided to the County Board for consideration. The County Board held its own public hearing, at which it invited public comment on the proposed ordinance. Several individuals spoke in favor of the proposed ordinance, and others, including several town officials and members of the public, spoke in opposition.

¶19 The members of the County Board then discussed the proposed ordinance among themselves, with their discussion likewise focusing on whether the proposed ordinance was inconsistent with the town's "expired" comprehensive plan, and the fact that the town board voted to recommend that the zoning petition be approved, despite any alleged inconsistency. During this discussion, the county zoning administrator expressed the view that the petition was consistent with Jefferson County's comprehensive plan and its zoning ordinances. The County Board sought an opinion from corporation counsel regarding what should be done in the face of the proposed ordinance's alleged inconsistency with the town plan. Counsel indicated that he saw "no issues" and that the petition "should be granted." Counsel suggested that the County Board focus on its own plan and

ordinances, noting that the town board would have an opportunity to veto any ordinance that the County Board passed.

¶20 The County Board voted to adopt the rezoning ordinance. The town board did not veto the ordinance.

### Defend Town's Certiorari Petition

¶21 Defend Town filed a petition for a writ of certiorari seeking circuit court review of the County Board's adoption of the rezoning ordinance. As pertinent here, Defend Town alleged that the County Board adopted the rezoning ordinance without making findings that are required by WIS. STAT. § 91.48(1). Defend Town further alleged that the rezoning ordinance could not be reconciled with the comprehensive plans that had been adopted by the Town of Concord and Jefferson County, and it asked the court to enter an order vacating the County Board's approval of the rezoning ordinance.

¶22 The circuit court ordered briefing and held several hearings at which it elicited arguments from the parties. A significant focus of the arguments was on what the remedy should be if the court were to determine that the County Board was required to make findings under WIS. STAT. § 91.48(1) but failed to do so. The County Board asked the court to "remand[] for any correction that the Court deems appropriate" rather than "reversing or undoing the zoning amendment." Defend Town argued that a remand would be futile because, it argued, the County Board could not reasonably make the findings required by § 91.48(1) based on the alleged inconsistencies between the rezoning ordinance and the comprehensive plans that had been adopted by the town and county.

¶23    The circuit court ultimately focused its decision on WIS. STAT. § 91.48(1), and did not expressly weigh in on whether the rezoning was or was not consistent with the town or county comprehensive plans.  The court determined that the rezoning ordinance must be "invalidat[ed]" and "vacat[ed]" because the County Board did not make findings that were required by § 91.48(1).  However, the court was "not prepared to say" that it would be "an impossibility" for the County Board to make the required findings because the court did not "have the sort of record" that would allow the court "to say that," and because "there is a considerable amount of deference that has to be left with the local governing body."  Following the hearing, the circuit court entered a judgment against the County Board that declared the rezoning ordinance "null and void and/or vacated as appropriate."  The County Board appeals.[7]

## DISCUSSION

¶24    Certiorari is the appropriate mechanism to challenge the validity of local government decisions, including rezoning decisions.  ***Ottman v. Town of Primrose***, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411.  When considering an appeal of a circuit court's certiorari decision, we review the decision of the local governing body, not the decision of the circuit court.  ***Miller v. Zoning Bd.***

---

[7] Defend Town's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs.  *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover").  This rule has recently been amended, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for efiling.  As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the efiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  S. CT. ORDER 20-07 cmt. at xl.

*of Appeals of Lyndon Station*, 2022 WI App 51, ¶29, 404 Wis. 2d 539, 980 N.W.2d 295 (*Miller I*), *affirmed by* 2023 WI 46, 407 Wis. 2d 678, 991 N.W.2d 380 (*Miller II*).  Our review is confined to the record before the local body at the time of its decision.  *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson Cnty. Bd. of Adjustment*, 131 Wis. 2d 101, 119, 388 N.W.2d 593 (1986) (courts do not generally consider any additional evidence on the merits of the local body's decision).  Our scope of review is limited to the following inquiries:  (1) whether the local body kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the local body might reasonably make the determination in question.  *Miller I*, 404 Wis. 2d 539, ¶29 (citations omitted).

¶25    Here, Defend Town's argument focuses on the second inquiry—whether the County Board proceeded on a correct theory of law.  A local governing body proceeds on a correct theory of law when it "relies on the applicable [statutes,] ordinances[,] and cases and applies them properly."  *Edward Kraemer & Sons, Inc. v. Sauk Cnty. Bd. of Adjustment*, 183 Wis. 2d 1, 8-9, 515 N.W.2d 256 (1994).  Whether the County Board proceeded on a correct theory of law is a question of law that we review de novo, while at the same time according a "presumption of correctness and validity" to its rezoning decision.  *Miller II*, 407 Wis. 2d 678, ¶9 (citation omitted).

¶26    We begin our analysis where the circuit court did—by considering what WIS. STAT. § 91.48(1) requires, and whether the County Board failed to make findings that are mandated by that statute.  After concluding that § 91.48(1) required the County Board to make findings that the County Board did not make, we consider the parties' arguments about the appropriate remedy.

## I. WISCONSIN STAT. § 91.48(1)

¶27    WISCONSIN STAT. § 91.48(1) is part of WIS. STAT. ch. 91, which, as noted, governs farmland preservation. The evident purpose of ch. 91 is to promote agricultural development and to preserve farmland for agriculture and agricultural-related uses. *See, e.g.*, WIS. STAT. §§ 91.10(1)(a)-(g); 91.38(1)(a)-(i).

¶28    As mentioned, WIS. STAT. ch. 91 authorizes and incentivizes "political subdivisions" to adopt "farmland preservation zoning ordinances" that create "farmland preservation zoning districts" and are certified by DATCP. *See* WIS. STAT. §§ 91.30, 91.38(1)(c)-(e). As pertinent to this appeal, after a farmland preservation zoning ordinance has been certified by DATCP, WIS. STAT. § 91.48 sets forth a process for the political subdivision to use when "rezon[ing] land out of a farmland preservation zoning district." The parties' dispute turns on what that process requires and whether it was satisfied here.

¶29    When considering what WIS. STAT. § 91.48(1) requires, we begin with the statutory text. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Section 91.48(1) provides that a "political subdivision with a certified farmland preservation zoning ordinance may rezone land out of a farmland preservation zoning district without having the rezoning certified" by DATCP. However, to do so, the subdivision must hold a "public hearing," after which it "finds all of the following":

> (a) The land is better suited for a use not allowed in the farmland preservation zoning district.
>
> (b) The rezoning is consistent with any applicable comprehensive plan.
>
> (c) The rezoning is substantially consistent with the county certified farmland preservation plan.

> (d) The rezoning will not substantially impair or limit current or future agricultural use of surrounding parcels of land that are zoned for or legally restricted to agricultural use.

*See* § 91.48(1)(a)-(d).[8]

¶30    According to its unambiguous language, WIS. STAT. § 91.48(1) gives a political subdivision two options for "rezon[ing] land out of a [certified] farmland preservation district." The political subdivision can have the rezoning certified by DATCP; or it can make the findings identified in the statute after a public hearing.

¶31    As a threshold matter, the County Board does not meaningfully dispute that the provisions of WIS. STAT. § 91.48(1) apply here. More specifically, it is undisputed that the term "political subdivision" includes counties, *see* WIS. STAT. § 91.01(24); that the farmland preservation zoning ordinance at issue was certified by DATCP; that the Brunson parcel was located within a farmland preservation zoning district; and that changing the zoning classification of 7.4 acres of the Brunson parcel to A-2 constituted rezoning the land "out of a farmland preservation zoning district" within the meaning of § 91.48(1).[9] The County

---

[8] Other provisions in WIS. STAT. ch 91 require the political subdivision to report the number of acres that it has rezoned out of a farmland preservation zoning district to DATCP each year. If the subdivision fails to comply with this reporting requirement, DATCP may withdraw its farmland preservation zoning ordinance certification. WIS. STAT. § 91.48(2), (4).

Separately, the parties point out that Jefferson County has its own ordinance, JEFFERSON COUNTY ORD. § 11.11(e)6., that contains requirements for "rezoning out of the A-1 district" that are similar to those set forth in WIS. STAT. § 91.48(1), and also requires the County's zoning committee to make several additional findings that are not required by § 91.48.

[9] Separately, the County Board contends that, even though land zoned A-2 is not eligible for inclusion in a farmland preservation *zoning district*, it can still be included in a "farmland preservation *area*" that is part of a certified farmland preservation *plan*. As discussed below, this argument might be pertinent to a determination of whether the rezoning at issue here is consistent

(continued)

Board did not pursue the option to rezone these acres through DATCP certification; therefore, the statutory text unambiguously required the County Board to make the findings identified in § 91.48(1).

¶32    The County Board appears to tacitly concede that it did not make any of the findings identified in WIS. STAT. § 91.48(1)—at least not "formally" or "expressly." Even so, the County Board argues that it did all that was required by § 91.48(1) for several overlapping reasons. It argues that the County Board was allowed to rely on and adopt any findings made by its designated county zoning agency (here, the zoning committee); that § 91.48 is not actually a "mandatory directive"; and that the deference we are to give to its rezoning decision means that we should affirm the decision—either because we should assume that any findings required by § 91.48(1) were made, or because we should uphold the rezoning decision if such findings would be supported by substantial evidence in the certiorari record. We address these arguments in turn.

## A. Findings by the Designated Zoning Authority

¶33    The County Board argues that WIS. STAT. § 91.48(1) does not require *the County Board* to *itself* make the findings in § 91.48(1). It argues that it was allowed to adopt the findings made by its designated zoning agency—here, the county zoning committee. Defend Town does not dispute that the County Board could have adopted the findings from the committee, if those findings had been made.

---

with Jefferson County's comprehensive plan or its farmland preservation plan. However, it does not appear to be pertinent to our determination that the provisions of WIS. STAT. § 91.48(1) apply to the rezoning decision.

¶34 We agree that the County Board may adopt any findings that were made by the county zoning committee. We further agree that, if the county zoning committee makes the required findings and the County Board adopts them, it has satisfied the requirement that the "political subdivision" make findings under WIS. STAT. § 91.48(1).[10] However, this conclusion does not affect the outcome of this case. Based on our review of the record, it is apparent that the committee did not make any findings on the topics set forth in § 91.48(1) that the County Board could have adopted.[11]

¶35 In arguing to the contrary, the County Board points to statements that were made by individual members of the county zoning committee members and that arguably touch on some of the topics listed in WIS. STAT. § 91.48(1).

[10] WISCONSIN STAT. § 91.48(1) does not specify any particular unit within a "political subdivision" that must hold the public hearing or make the findings required by the statute. Because § 91.48(1) is silent on this issue, it is appropriate to look to WIS. STAT. ch. 59, which also governs county zoning. As provided in ch. 59, a county board is the only body that has authority to amend a county's zoning ordinances. WIS. STAT. § 59.69(5)(e)5. Yet, ch. 59 also contemplates that the county board will receive a recommendation and proposed ordinance from its designated zoning agency before voting on such an amendment. *See* § 59.69(5)(e)1., 2., 4., 5. Section 59.69 specifies that, whenever a public hearing is required, the hearing is to be held by the county's designated zoning agency, § 59.69(2)(a)1., and expressly requires the agency to hold a public hearing on any rezoning petition, § 59.69(5)(e)2. Similarly, Jefferson County's ordinances specify that "rezoning out of the A-1 district" may "occur only after the [county zoning committee] conducts a public hearing and makes findings as specified in § 91.48(1)." JEFFERSON COUNTY ORD. § 11.04(f)6.; *see also* JEFFERSON COUNTY ORD. § 11.11(e)6.

Based on these provisions, it is apparent that the county zoning committee may make the findings in WIS. STAT. § 91.48(1) after holding a public hearing under WIS. STAT. § 59.69(5)(e)2., and that the County Board may, in its discretion, adopt the committee's findings as its own under § 59.69(5)(e)5.

[11] We pause to observe that the County Board's appellate briefing does not accurately characterize the circuit court's rationale for voiding the rezoning ordinance. The County Board contends that the court determined that the "County Board, rather than the designated county zoning agency, was required to engage in its own fact-finding on the record.'" This assertion is not accurate—the court voided the ordinance based on its determination that neither the County Board nor its zoning committee made the findings required by WIS. STAT. § 91.48(1).

Even so, we are not persuaded that these statements constitute a finding under § 91.48(1) as there is nothing in the record showing that the committee actually determined that the portion of the Brunson parcel at issue was "better suited for a use not allowed in the farmland preservation zoning district"; that the rezoning was "consistent with any applicable comprehensive plan"; that the rezoning was "substantially consistent with the county certified farmland preservation plan"; or that the rezoning would not "substantially impair or limit current or future agricultural use of surrounding parcels of land that are zoned for or legally restricted to agricultural use." *See* § 91.48(1). Of these topics, the committee's most robust discussion was about whether the proposed rezoning would be consistent with the Town of Concord's comprehensive plan. Yet, opinions on this topic were decidedly mixed, and the transcripts do not reveal that the committee reached any conclusion or made any findings on this topic during the meeting.

¶36 Nor does the county zoning committee's written decision contain any such findings. Quite to the contrary—as discussed above, the decision was memorialized on a preprinted form that allowed the committee to check a box indicating that it "finds [that the rezoning] amendment meets the standards of [WIS. STAT. §] 91.48." The committee could have checked that box on the form, which would have implied that it made the required findings. However, the committee did not do so. Accordingly, the written decision does not reflect that the committee made the findings required by § 91.48(1) as part of its decision to recommend that the County Board pass the rezoning ordinance.

### B. No Mandatory Directive

¶37 In addition to arguing that the county zoning committee made the required findings, the County Board also seems to suggest that the findings may

18

not have been required after all. At one point in its appellate briefing, the County Board asserts that WIS. STAT. § 91.48 "is not a mandatory directive that forbids local governments from rezoning property when they fail to make specified findings." Instead, the County Board suggests that § 91.48 merely identifies a set of discretionary considerations that should guide local decisions to rezone land out of a farmland preservation zoning district.

¶38　This argument is unfounded. WIS. STAT. § 91.48(1) unambiguously imposes a condition that must be satisfied to rezone land out of a certified farmland preservation zoning district. The findings identified in the statute are "discretionary" only in the sense that the political subdivision need not make them if it opts to instead ask DATCP to certify the rezoning. As we have explained, the County Board did not do so here; therefore, it was required to make the findings set forth in § 91.48(1).

¶39　The County Board may instead be arguing that we should not interpret WIS. STAT. § 91.48(1) to mean what it unambiguously provides because rezoning is "quasi-legislative" in nature, and legislative bodies are not generally required to articulate findings when they enact legislation. As we now explain, we agree with the predicates of the County Board's argument—rezoning is considered to be a "quasi-legislative" function, and legislative bodies are not usually required to make findings when they legislate. However, we do not agree that this means the County Board was not required to make findings under § 91.48. In enacting § 91.48(1), the Wisconsin legislature unambiguously required findings as part of certain rezoning decisions, and the County Board does not cite any legal authority that would prevent the legislature from imposing this requirement on a local government's exercise of zoning authority. We will not interpret § 91.48(1) to

19

mean something other than what it unambiguously provides merely because making findings is not typically associated with quasi-legislative functions.

¶40    By way of background, Wisconsin courts have acknowledged that local governments perform functions that are both legislative and adjudicative in nature. *Miller I*, 404 Wis. 2d 539, ¶¶23-26.  In prior opinions, when considering the degree to which due process principles apply to local government decision making and the degree of deference to afford local government decisions, we have sometimes found it useful to categorize such decisions as either "quasi-legislative" or "quasi-judicial."  *See, e.g.*, *id.* (citing cases); *id.*, ¶¶40-41 (discussing due process requirements of "quasi-legislative" and "quasi-judicial" decisions); *Cushman v. City of Racine*, 39 Wis. 2d 303, 307, 159 N.W.2d 67 (1968).  Our cases "firmly establish" that rezoning land is a quasi-legislative function, even if it may be a fact-intensive and individualized determination.  *Miller I*, 404 Wis. 2d 539, ¶26 ("the act of rezoning is as legislative in nature as drafting and adopting a zoning ordinance in the first instance").[12]

¶41    The County Board correctly observes that, if WIS. STAT. § 91.48(1) requires a political subdivision to make findings when rezoning land out of a farmland preservation zoning district, it requires it to perform an act that is typically associated with judicial decision making.  However, the argument that a political subdivision cannot be required to make findings simply because zoning

---

[12] We have described "quasi-legislative actions" as those involving the creation of "prospective rules of general applicability." *Miller v. Zoning Bd. of Appeals of Lyndon Station*, 2022 WI App 51, ¶23, 404 Wis. 2d 539, 980 N.W.2d 295 (*Miller I*).  By contrast, we have described "quasi-judicial actions" as those that "implement" or "apply" preexisting rules to a particular set of historic facts or circumstances, and often require a local body to engage in factfinding.  *Id.*, ¶¶23, 40 (citing *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 25, 498 N.W.2d 842 (1993)).

has been characterized as a quasi-legislative activity misses the mark. Local zoning authority is regulated by state statutes, and in those statutes, the state legislature routinely imposes conditions on local exercises of zoning authority. *See, e.g.*, WIS. STAT. § 59.69(4) (imposing numerous conditions on local zoning decisions). It is the state statutes that control what the County Board must do when exercising its zoning authority, not our prior description of rezoning as "quasi-legislative" in nature.

¶42     Apart from arguing that WIS. STAT. § 91.48 cannot be read to mandate findings because zoning is a quasi-legislative activity, the County Board does not identify any legal authority that would prevent the legislature from imposing such conditions—whether "legislative" or "judicial" in nature—on the exercise of local zoning authority. For example, the County Board does not argue that the requirements of § 91.48(1) are unconstitutional, or that the legislature lacks the power to impose such requirements because farmland preservation is purely a matter of local concern. *See, e.g.*, ***Adams v. Wisconsin Livestock Facilities Siting Rev. Bd.***, 2012 WI 85, ¶29, 342 Wis. 2d 444, 820 N.W.2d 404 ("the legislature may, on issues of statewide concern, prohibit political subdivisions from enacting ordinances, or invalidate ordinances already promulgated").

¶43     Finally, the County Board contends that our decision in ***Step Now***, 264 Wis. 2d 662, supports its argument that WIS. STAT. § 91.48(1) does not require it to make findings. We disagree. In ***Step Now***, we declined to invalidate a town's rezoning ordinance, even though the town did not make any findings under WIS. STAT. § 91.77 (2007-08), a predecessor to the current version of

§ 91.48(1).[13]   *Id.*, ¶69.   We reasoned that the citizen group challenging the ordinance "ha[d] not provided any authority for its contention that a legislative body's failure to provide formal WIS. STAT. § 91.77 findings justifies invalidation of the rezoning." *Id.*   Thus, our rejection of the argument in *Step Now* turned on the citizen group's failure to develop and support its argument.  Here, by contrast, Defend Town has developed an argument about the language of § 91.48(1), and we have concluded that Defend Town's argument is supported by the unambiguous statutory text.  The County Board does not explain how another party's failure to develop an argument about the text of a different statute in a prior case could override our interpretation of § 91.48(1).

### C. Presumption of Correctness

¶44     The County Board also argues that its rezoning decision is entitled to a presumption of correctness.  Therefore, it argues, we should either presume that the required findings were made, or we should sustain the rezoning ordinance if substantial evidence in the record would support the required findings.  Again, we agree with a predicate to the County Board's argument—specifically, that its rezoning decision is afforded a presumption of correctness.  However, as we now explain, that does not mean that we would presume that it made required findings that are not found in the record, or that we would review the record to see if there is evidence that could support required findings that were never made.

---

[13] Although the *Step Now* court cited to the 2001-02 version of that statute, we cite to the 2007-08 version, which was in effect immediately before the legislature repealed the version of WIS. STAT. ch 91 that was in place when *Step Now* was decided and replaced it with the version that is in place today.  *See* 2009 Wis. Act 28 § 1947.

¶45     We begin with the County Board's argument that we must presume that it made the findings in WIS. STAT. § 91.48(1), given that it was aware of § 91.48's requirements and passed the rezoning ordinance.   To support its argument, the County Board cites a passage from ***State ex rel. Sullivan v. Dammann***, 227 Wis. 72, 81-82, 277 N.W.2d 687 (1938), but as we now explain, the cited passage from ***Sullivan*** is inapt.

¶46     In that case, Sullivan was a state employee, and the state owed her money for services rendered.   ***Id.*** at 74.   The legislature passed a bill that appropriated a certain amount to Sullivan, but the secretary of state refused to pay the appropriation.   ***Id.*** at 77-78.   Sullivan filed a writ of mandamus against the secretary, and the issue was whether the appropriation violated a provision in the state constitution that prevented the legislature from granting "extra compensation to any servant after the services shall have been rendered." ***Id.*** at 74.

¶47     Our supreme court rejected the argument that the appropriation was unconstitutional.   ***Id.*** at 79-82.   It observed that the appropriation was not unconstitutional on its face—it "purport[ed] to appropriate money to compensate [Sullivan] for services performed," and "d[id] not purport to grant extra compensation for services rendered." ***Id.*** at 79.   Then, looking deeper into the dispute about the amount that Sullivan was owed, the court explained that it presumed the legislature did not intend to pass any act that would conflict with constitutional limits on its authority—the legislature had a verified claim before it, and it held a hearing at which it considered the facts on which the claim was based. ***Id.*** at 81.   The ***Sullivan*** court then went on to make the statement that the County Board relies on in this case.   The court cited a legal treatise, American Jurisprudence, for the proposition that, "if any special finding of fact was needed

in order to warrant the passage of a particular act, the passage of the act itself was treated as the equivalent of such finding." *Id.* at 81-82.

¶48    The County Board appears to argue that the presumption described in *Sullivan* should be extended here, such that we must conclude that, because the County Board voted in favor of the rezoning ordinance, it necessarily made the findings required by WIS. STAT. § 91.48(1).  We disagree for at least two reasons. First, the *Sullivan* court was reviewing a bill passed by the state legislature, and the County Board does not cite any authority that would extend the principle articulated in *Sullivan* to our certiorari review of quasi-legislative local decisions. Second, even if we might extend this presumption to local legislative bodies, it would be inappropriate to presume that the required findings were made here.  As discussed, the County Board does not argue that it made the findings itself and instead argues that it adopted findings that were made by the county zoning committee; yet, as explained above, the committee's written decision makes clear that it declined to make the findings required by § 91.48(1). *See supra*, ¶36.

¶49    We now turn to the County Board's alternative assertion that we must sustain its rezoning ordinance if "any reasonable view of the evidence" in the record would support the findings required by WIS. STAT. § 91.48(1).  We reject this argument.  Had the findings required by § 91.48(1) been made (either by the County Board itself or by adopting findings made by its zoning committee), we would review those findings, and we would consider "whether the evidence was such that [the County Board] might reasonably make the … determination in question." *Miller I*, 404 Wis. 2d 539, ¶29.  However, the County Board cites no authority to support the proposition that it is this court's role to make findings in the first instance, or to review evidence in the record to see if it would support findings that were never made.

¶50    In sum, for all of these reasons, we conclude that the County Board failed to make the findings required by WIS. STAT. § 91.48(1) before it passed the rezoning ordinance, and, therefore, it did not proceed on a correct theory of law. Accordingly, we conclude that the County Board did not validly enact the rezoning ordinance.

## II.  Remedy

¶51    We next address the appropriate remedy.  The issue is whether we should simply vacate the rezoning ordinance based on the County Board's failure to proceed on a correct theory of law, or whether we should also remand to the County Board for additional proceedings that are consistent with the requirements of WIS. STAT. § 91.48(1).  As part of our discussion, we address the County Board's argument that it should be given an opportunity to make the findings required by § 91.48(1) on remand, as well as Defend Town's argument that a remand for that purpose would be futile.

¶52    As a general matter, we agree with the County Board that a remand is appropriate if the error in its proceedings is one that could potentially be cured. *See generally **Lamar Cent. Outdoor, Inc. v. Board of Zoning Appeals of Milwaukee***, 2005 WI 117, ¶24, 284 Wis. 2d 1, 700 N.W.2d 87.

¶53    Defend Town argues that a remand would be futile because the County Board could not reasonably make one of the findings required by WIS. STAT. § 91.48(1)(b)—that the proposed rezoning is compatible with the county's comprehensive plan.  Notably, although the arguments during the local government proceedings focused on whether the rezoning was consistent with the Town of Concord's comprehensive plan, at this point on appeal, Defend Town's futility argument is based exclusively on the comprehensive plan adopted by

Jefferson County. In its appellate briefing, Defend Town contends that the "Town Plan is simply irrelevant to this case."

¶54 We understand Defend Town's current argument about the county's comprehensive plan as follows. Jefferson County's farmland preservation plan is incorporated into its comprehensive plan. The farmland preservation plan includes a map that depicts areas that are part of an existing rural hamlet and those areas that are projected as "15-year growth areas," and, according to Defend Town, the comprehensive plan contemplates that land in those areas will not be limited to strictly agricultural use. The Brunson parcel is not located in a rural hamlet, nor is it located in a 15-year growth area. Instead, the Brunson parcel is located in the farmland preservation area, defined as an "area[] of existing agricultural or agricultural-related uses … that should be preserved for agricultural-related uses throughout the planning horizon of [the farmland preservation plan]." According to Defend Town, if the acreage is rezoned to agricultural and rural business (A-2), it is not being "preserved for agricultural-related uses."

¶55 For its part, the County Board takes issue with the ultimate conclusion that Defend Town draws from its arguments about the county's comprehensive and farmland preservation plans. Most notably, the County Board contends that land zoned A-2 is eligible for inclusion in a farmland preservation area that is part of a certified farmland preservation plan. Therefore, the County Board contends, rezoning land to A-2 does not in and of itself take the land outside of a farmland preservation area, and is consistent with the portion of the plan that provides that farmland preservation areas "should be preserved for agricultural-related uses."

¶56    As noted above, the County Board did not resolve any of the issues arising out of these arguments, and did not make any finding about whether the proposed rezoning is consistent with the county's comprehensive plan. Thus, Defend Town would have us make that determination in the first instance. Like the circuit court, we decline to do so for at least the following reasons. First, as we have explained, a comprehensive plan is meant to be an "advisory … guide to community development," *Step Now*, 264 Wis. 2d 662, ¶45, and not necessarily a rigid set of rules. Second, consistency with the county's comprehensive plan is quintessentially an assessment for the county to make, and one which we would presume correct on certiorari review. Here, because the County Board did not make any finding about whether the rezoning ordinance is consistent with the county's comprehensive plan, we have no determination that we would presume correct, and nothing to assess within the limited scope of certiorari review.

¶57    Accordingly, we reject Defend Town's argument that a remand to the County Board would necessarily be futile. We therefore remand to the circuit court to enter an order that remands the matter to the County Board for additional proceedings that are consistent with the requirements of WIS. STAT. § 91.48(1).[14]

*By the Court.*—Judgment affirmed as modified and remanded.

Recommended for publication in the official reports.

---

[14] Before concluding, we pause to comment on one aspect of the circuit court's oral ruling. At the close of the final hearing, Defend Town argued that "any effort to rezone the same parcel" would "have to start with a new petition for a rezone," and the circuit court expressed agreement with that position. Defend Town does not renew this argument on appeal, but for the sake of clarity, we do not necessarily agree. The error that the County Board made in this case occurred after the rezoning petition was filed, and we have concluded that the rezoning ordinance was not validly enacted. Yet, Defend Town does not provide any basis for concluding that the rezoning petition was itself invalid or defective in some respect.